**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| MANUEL LOPEZ, *et al.*,<br>Plaintiffs,<br>vs.<br>PETE KING NEVADA CORP., *et al.*,<br>Defendants. | ) | 2:06-CV-1200-RCJ-LRL<br><br>**ORDER** |

This matter comes before the Court on Defendant Pulte Homes Corporation's Motion to Dismiss. (#24.) The Court has considered the Motion, the pleadings on file, and oral argument on behalf of all parties and issues the following Order.

**BACKGROUND**

On September 26, 2006, Plaintiffs Manuel Lopez, Manual Lopez Jr., Lorenzo Padilla, Lorenzo Padilla Jr., Israel Garcia, and Ignacio Garcia filed suit in this Court against several Defendants, including Defendant Pulte Homes ("Pulte") who has filed the instant Motion to Dismiss. Plaintiffs filed a class action lawsuit to recover overtime compensation, liquidated damages, attorney's fees, and costs pursuant to § 16(b), 29 U.S.C. § 216(b), of the Fair Labor Standards Act of 1938 and Nevada state law. Plaintiffs allege five causes of action in their Complaint. However, Plaintiffs only seek recovery against Defendant Pulte with regards to

count five: Relief Pursuant to Nev. Rev. Stat. § 608.150. Defendant Pulte asks this Court to dismiss it from this case.

Plaintiffs are painters and drywall workers paid on a piece rate basis and employed by Defendant Pete King Corporation ("Pete King"). According to Plaintiffs, while employed with Pete King they regularly worked more than forty hours in a week, and Defendant Pete King failed to pay overtime. Plaintiffs worked at various construction sites throughout the Las Vegas and Southern Nevada area. As is standard practice in the industry, Defendant Pete King paid Plaintiffs on a piece rate basis. A piece rate unit is a completed structure such as a new home. Defendant Pete King assigns a per-unit price for each structure that needed drywall or painting. Upon completing a workweek, Plaintiffs and the alleged class report to Defendant Pete King the number of units completed, who then pays Plaintiffs based solely on the units completed without any regard to actual hours worked. According to Plaintiffs, Defendant Pete King failed to keep accurate accounting and time records and failed to ever pay any overtime.

Defendant Pulte is a builder and general contractor who frequently hired Defendant Pete King as a subcontractor. Plaintiffs worked on several Pulte job sites, as directed by Defendant Pete King. Plaintiffs allege that Defendant Pulte is liable for its subcontractor's failure to pay required overtime pay.

## DISCUSSION

Defendant Pulte asks the Court to dismiss it from this action because Plaintiffs' cause of action against Pulte is not yet ripe. Pulte also contends that Plaintiffs have failed to state a claim against Pulte. Specifically, Pulte contends that Plaintiffs' claim pursuant to Nev. Rev. Stat. §

608.150 is premature, and that even if it were not, Plaintiffs have failed to allege sufficient facts to impose liability upon Pulte.

**I.     Ripeness**

"[R]ipeness is 'peculiarly a question of timing' . . . designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (quoting *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974) & *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  The ripeness doctrine contains both a constitutional component derived from Article III limitations on judicial power and a prudential component. *Id.*  Defendant Pulte does not make a ripeness argument based on the constitutional component. With respect to the prudential aspects of ripeness, the Court considers whether the issues are fit for judicial decision and the hardship to the parties if the Court declines to address the matter. *Thomas*, 220 F.3d at 1141.

Defendant Pulte argues that Plaintiffs' cause of action against Pulte is not ripe because Plaintiffs have failed to comply with the procedural requirements of the statute upon which Plaintiffs base their claim.

**A.     Nev. Rev. Stat. § 608.150**

Plaintiffs base their claim against Defendant Pulte on NRS 608.150, which states in part:

(1) Every original contractor making or taking any contract in this state for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapters 616A to 617, inclusive, of NRS . . .

> (3) The district attorney of any county wherein the defendant may reside or be found shall institute civil proceedings against any such original contractor failing to comply with the provisions of this section in a civil action for the amount of all wages and damage that may be owing or have accrued as a result of the failure of any subcontractor acting under the original contractor, and any property of the original contractor, not exempt by law, is subject to attachment and execution for the payment of any judgment that may be recovered in any action under the provisions of this section.

Nev. Rev. Stat. § 608.150(1), (3). "It is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act." *McKay v. Bd. of Supervisors*, 703 P.2d 438, 441 (Nev. 1986). Defendant Pulte states that NRS § 608.150 imposes two conditions precedent that a plaintiff must satisfy before seeking liability against a contractor. Specifically, Pulte argues that before Plaintiffs may sue a contractor, they must (1) demonstrate to the Court that the subcontractor owes unpaid wages and (2) demonstrate to the Court that the named subcontractors are unable to pay. While these may be prerequisites to prevailing or surviving summary judgment as to Plaintiffs' claim against Pulte, Plaintiffs are not required to satisfy these alleged procedural requirements before filing suit.

The statute is silent as to any prerequisites to bring suit. Indeed, Defendant Pulte acknowledges that its proposed procedural requirements are "implied." (#29 at 8.) The statute's plain language is clear. The statute unambiguously states that "every original contractor . . . shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work . . . ." Nev. Rev. Stat. § 608.150(1). The statute clearly states that contractors assume all liability for their subcontractors. The statute further states that a party may bring a civil action against any contractor "for the amount of all wages and damage that may be owing

Page 4 of 8

or have accrued as a result of the failure of any subcontractor acting under the original contractor . . . ." § 608.150(3). Pulte argues that the language "may be owing . . . as a result of the failure of any subcontractor" to pay implies that the Court must first determine that the subcontractor has failed to pay. When read in conjunction with clause (1), Pulte's argument fails. Clause (1) unambiguously establishes that every contractor assumes all subcontractor liability. Plaintiffs have alleged that the subcontractors failed to pay overtime wages, as they are required by law. Assuming this allegation is true, Plaintiffs have demonstrated that the subcontractor is potentially liable for unpaid wages. Pulte, as the contractor, assumes and is liable for the subcontractor's indebtedness. *Id.* The statute does not state that a plaintiff may seek liability against the contractor only after he proves that the subcontractor is liable and makes a demand for any owed wages. Indeed, this Court has stated that § 608.150 "imposes liability on all general contractors for the labor-related debts of their subcontractors" *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the U.S. and Can. v. Grove Inc.*, 105 F. Supp. 2d 1129, 1131-32 (D. Nev. 2000).

Pulte cites several cases to support its argument. However, these cases do not address or discuss whether a plaintiff must first satisfy the "implied prerequisites" Pulte urges the Court to adopt. Indeed, no case citing NRS 608.150 has ever held that a plaintiff must first seek recovery from the subcontractor before it sues the contractor. Pulte further argues that the Court should treat § 608.150 as a guaranty clause and treat Pulte as a guarantor. Plaintiff cites several cases stating that a third-party seeking recovery against a guarantor must first pursue the principal obligor. No case has ever interpreted § 608.150 as a guaranty clause. However, this Court has stated "NRS 608.150 promotes employees' interests by essentially turning general

contractors into sureties for the labor-related debts of their subcontractors." *United Ass'n of Journeymen*, 105 F. Supp. 2d. at 1132. Nevada law distinguishes between a guarantor and a surety. *Component Sys. Corp. v. Eight Judicial Dist. Ct. of Nev.*, 692 P.2d 1296, 1299 (Nev. 1985). Under Nevada law, it is well settled that a surety, unlike a guarantor, is bound as an original promisor, and the obligee may thus principally seek recovery against the surety. *See id.* (citing *Short v. Sinai*, 50 Nev. 346, 259 P. 417 (Nev. 1927)); see also *Glen Falls Ins. Co. v. First Nat'l Bank.*, 427 P.2d 1, 6 (Nev. 1967) (stating that a "surety is bound with his principal as original promisor; he is a debtor from the beginning, and must see that the debt is paid, and is held ordinarily to know every default of his principal"). Thus, contrary to Pulte's assertion, Nevada case law recognizes that a contractor, as a surety, is bound as an original promisor. Therefore, Plaintiffs may seek recovery against Pulte together with the subcontractors.

Pulte further cites the legislative history to support its argument. However, as the Nevada Supreme Court has explicitly noted, NRS § 608.150 reflects "a desire to expand the options available to workers for recovering unpaid wages, not to narrow those options." *U.S. Design & Constr. Corp. v. Int'l Brotherhood of Elec. Workers*, 50 P.3d 170, 172 (Nev. 2002) (citing 1929-1930 Nev. Comm'r of Labor Biennial Rep. 7, reprinted in 1 Appendix to Journals S. & Assemb., 35th Sess. (Nev. 1913)). As noted above, "[i]t is well settled in Nevada that words in a statute should be given their plain meaning unless this violates the spirit of the act." *McKay v. Bd. of Supervisors*, 703 P.2d 438, 441 (Nev. 1986). Granting Pulte's Motion based on ripeness not only would contradict the statute's plain meaning, it also would violate the "spirit of the act."

In conclusion, NRS § 608.150 does not impose the procedural requirements that Pulte envisions. Further, this Court has already stated that "NRS § 608.150 essentially turns general contractors into sureties." As a surety, Nevada law treats Pulte as the original obligor and thus allows the obligee to seek recovery from both Pulte and the subcontractors. Moreover, the legislative history to which Pulte cites does not aid its case. Accordingly, the Court denies Pulte's Motion to Dismiss as it relates to Pulte's ripeness argument. Pulte may seek subrogation or to recover from the subcontractors in this case, but Nevada law does not prohibit Plaintiffs' claim.

### B.      Failure to State a Claim

Pulte also argues that Plaintiffs have failed to allege sufficient facts to impose liability upon Pulte. Plaintiffs allege that the subcontractor Defendants failed to pay overtime. Plaintiffs further state that they worked on several Pulte projects while employed by the subcontractors. Pulte argues that under NRS § 608.150, to impose liability on Pulte for overtime wages, Plaintiffs must allege and establish that they worked more than forty hours in a workweek on a Pulte Home project. Plaintiffs have in fact alleged they worked more than forty hours on Pulte projects. In their Complaint, Plaintiffs allege that "Plaintiffs and their class performed work on Pulte Homes job sites, as directed by Pete King and William Brice King." (#1-1 at 3.) Plaintiffs further allege that Pulte homes committed the unlawful acts alleged in the Complaint, namely, failure to pay overtime. Thus, assuming Plaintiffs' allegations are true, Plaintiffs have stated a claim for which the Court may grant relief. After conducting initial discovery or producing evidence that Plaintiffs never worked on a Pulte Home site for more than forty hours, or that the subcontractors actually paid Plaintiffs for that work, Defendant Pulte may file a Motion for

Summary Judgment or Motion for Judgment on the Pleadings. However, at the initial pleading stage, Plaintiffs have stated a valid claim. The Court therefore denies Pulte's Motion to Dismiss.

## CONCLUSION

The Court denies Defendant Pulte's Motion to Dismiss. NRS § 608.150 does not impose the procedural requirements that Defendant Pulte asserts. Further, the case law to which Defendant cites does not support its argument. Indeed, the statute's plain language, the relevant case law, and the legislative history indicate that Plaintiffs' claim against Pulte is indeed ripe. Further, Plaintiffs have stated a valid claim at this stage of litigation. After conducting initial discovery or producing evidence that Plaintiffs never worked on a Pulte site for more than forty hours, or that the subcontractors actually paid Plaintiffs for that work, Defendant Pulte may file a Motion for Summary Judgment. Accordingly, IT IS HEREBY ORDERED that Defendant Pulte's Motion to Dismiss (#24) is *denied*.

DATED:    September 4, 2007

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE